Reiter Oldsmobile, Inc. vs. General Motors
Corporation & another.[1]

Hampden.    May 10, 1979. — August 7, 1979.

Present: Hennessey, C.J., Quirico, Braucher, Kaplan, Wilkins, Liacos,
& Abrams, JJ.

*Consumer Protection*, Motor vehicle franchise. *Motor Vehicle*, Dealer,
Franchise. *Statute*, Construction.

The remedies given a motor vehicle dealer or franchisee by G. L. c. 93B
are the only remedies available for violation of that act by a manu-
facturer. [708-709]

Civil action commenced in the Superior Court on
March 8, 1976.

The case was heard by *Moriarty*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Michael G. West* for the plaintiff.

*Daniel L. Goldberg* for the defendants.

Braucher, J. The plaintiff (Reiter) sought to enjoin the
grant of a franchise by General Motors Corporation
(GMC) to Tober Foreign Motors, Inc. (Tober), in the mar-
ket area served by Reiter. The complaint proceeded on
the theory that the grant of a competitive motor vehicle
franchise without the current franchisee's prior approval
violated G. L. c. 93B, §§ 3 and 4, and therefore was an
unfair method of competition and an unfair or deceptive
act or practice within the meaning of G. L. c. 93A, § 2.
Reiter sought relief only under § 11 of c. 93A, and not the
remedial provisions of c. 93B. We hold that the remedies
given a motor vehicle dealer or franchisee by c. 93B are
the only remedies available for violation of that act.

_____

[1] Tober Foreign Motors, Inc.

We summarize the allegations in Reiter's complaint. In November, 1975, GMC and Reiter entered into a franchise agreement under which GMC granted Reiter the right to conduct certain "Dealership Operations," the "non-exclusive" right to buy new Oldsmobile motor vehicles and parts from GMC, and the "non-exclusive" right to identify itself as a "Franchised Oldsmobile Dealer" in the Springfield area. In March, 1976, GMC informed Reiter that it had given Tober an Oldsmobile franchise in the Springfield metropolitan area. Reiter objected and immediately sought to enjoin the grant of the franchise. A temporary restraining order was granted on March 10, 1976, and continued by agreement of the parties until October 12, 1976, when a judge of the Superior Court allowed the defendants' motions for judgment on the pleadings and entered judgment dismissing the complaint for failure to state a claim on which relief could be granted.[2] Reiter appealed, and we transferred the case to this court on our own motion.

1. *G. L. c. 93B.* General Laws c. 93B, § 3, inserted by St. 1970, c. 814, § 1, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices" occurring in the automotive industry. Although the act applies to certain transactions between motor vehicle dealers and consumers, it is addressed primarily to unfairness in dealings among motor vehicle manufacturers, distributors and dealers. *Id.* § 4. See *Tober Foreign Motors, Inc.* v. *Reiter Oldsmobile, Inc.,* 376 Mass. 313, 319-320 (1978). Unlike the broad prohibition of "unfair or deceptive acts or practices" found in c. 93A, § 2 (*a*), enacted three years earlier, c. 93B, § 4, specifies those practices that shall be "deemed" unfair or deceptive under § 3. Among those defined practices is the grant of "a competi-

---

[2] Subsequent and related proceedings in this case are reported in *Tober Foreign Motors, Inc.* v. *Reiter Oldsmobile, Inc.,* 376 Mass. 313 (1978), and *Reiter Oldsmobile, Inc.* v. *General Motors Corp.,* 6 Mass. App. Ct. 637 (1978).

tive franchise in the relevant market area previously granted to another franchisee, such relevant market area to be determined exclusively by equitable principles; provided, however, that if the manufacturer wishes to grant such a franchise to an independent dealer ... then the manufacturer shall give notice to the existing dealer or dealers in the area and, unless the parties agree, the matter shall be submitted to final and binding arbitration under the principles herein prescribed, for a determination of the relevant market area, the adequacy of the servicing of the area by the existing dealer or dealers and the propriety of the granting of such additional dealership." G. L. c.93B, § 4(3)(*l*).

Under G. L. c. 93B, § 12, the Attorney General is directed to "enforce compliance with the provisions of this chapter in accordance with sections four to eight, inclusive, of chapter ninety-three A." In addition, motor vehicle dealers are given in § 12 "the right to damages as provided in sections nine and ten of said chapter ninety-three A." Although limited injunctive relief is made available in § 4 (3) (c) to dealers threatened with termination of their franchises, there is no general provision for injunctive relief in § 12. Indeed, it appears that the Legislature purposely excluded injunctive relief from the remedies available to dealers by making specific reference in § 12 only to the damages remedy provided in G. L. c. 93A, §§ 9 and 10; § 9 also allows persons aggrieved by violations of c. 93A to seek injunctive relief.[3]

---

[3] After judgment in the proceedings below, c. 93B was amended by St. 1977, c. 717, § 3, to give dealers a right to petition the Superior Court to stay the grant of a competing franchise. G. L. c. 93B, § 4 (3) (*l*). The cross-reference to the damages remedy of c. 93A, §§ 9 and 10, in § 12 was eliminated and, in a new § 12A, dealers aggrieved by violations of c. 93B were given the right to damages and injunctive relief, with no provision for multiple damages in the event of wilful violations. St. 1977, c. 717, § 5. The defendants agree that dismissal of Reiter's complaint should be without prejudice to its right to file an amended complaint seeking relief under c. 93B, as amended.

2. *G. L. c. 93A.* By framing its complaint solely under c. 93A, §§ 2 and 11, Reiter sought to avoid the limitation on remedies available under G. L. c. 93B. Section 2 (*a*) of c. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The statute itself furnishes no definition of what practices are unfair or deceptive. Section 2 (*b*) directs courts to be guided in construing § 2 (*a*) by interpretations given § 5(a) (1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (1) (1976), by Federal courts and the Federal Trade Commission (FTC). Under § 2 (*c*) the Attorney General is empowered to issue interpretive rules and regulations not inconsistent with interpretations of 15 U.S.C. § 45(a) (1) (1970). Section 11, inserted by St. 1972, c. 614, § 2, allows persons engaged in trade or commerce to seek damages or injunctive relief for violations of § 2 (*a*) or rules promulgated thereunder.

It is doubtful that the conduct charged in the complaint amounts to an unfair or deceptive act or practice under § 2 (*a*). We have found no decisions of Federal courts or the FTC that condemn the grant of a competitive franchise under 15 U.S.C. § 45(a) (1) (1970). Nor does such a grant appear to us to be "immoral, unethical, oppressive" or "unscrupulous," or to fall "within any recognized conception of unfairness." *PMP Assocs., Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975) (standard of unfairness employed by FTC). Whatever unfairness there may be in the grant of a competitive franchise derives solely from the statutory declaration in c. 93B, §§ 3 (*a*), 4 (3) (*l*). Reiter relies heavily on regulations promulgated by the Attorney General under c. 93A, § 2 (*c*), which declare that an act violates § 2 (*a*) if it "fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection." Regulations of the Attorney General, XV-C, 20 Code Mass. Regs. Part 5, at 40 (1976). The scope

of the regulation is unclear. Not every act made unlawful by statute is unfair or deceptive within the meaning of c. 93A, § 2 (a). *Mechanics Nat'l Bank* v. *Killeen*, 377 Mass. 100, 109 (1979).

Assuming, however, that GMC's conduct violated both c. 93A, § 2 (a), and c. 93B, § 3 (a), we think that the provisions of c. 93B must govern Reiter's remedy. Chapter 93A is a statute of general application to all trade and commerce. Chapter 93B was enacted after c. 93A and applies specifically to unfairness in one industry. It is a self-contained statute, prescribing specific remedies for its violation. The Legislature was aware of the private injunctive relief available under c. 93A, § 9, but made explicit reference in c. 93B, § 12, only to the damage remedy set forth in § 9, excluding by implication injunctive relief. The two statutes may overlap in their coverage, but in the case of a conflict, the provisions of the specific statute must govern. See *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 118-119 (1973), and cases cited. To hold otherwise would be to overlook the careful limitation on private remedies in c. 93B and render much of the statute surplusage.

Our decision in *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 75-78 (1977), is not to the contrary. The defendant in that case had argued that comprehensive regulation of unfair or deceptive insurance practices under G. L. c. 176D precluded private actions under c. 93A based on conduct falling within the proscriptions of c. 176D. Unlike c. 93B, c. 176D made no provision for private actions and contemplated enforcement by the Commissioner of Insurance. But § 8 of c. 176D provided: "No order of the commissioner under this chapter or order of a court to enforce the same shall in any way relieve or absolve any person affected by such order from any liability under any other laws of this commonwealth." Language of similar import does not appear in c. 93B. See also *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 42-43 (1979) (G. L. c. 164, § 78, contemplates that Attorney General take

"appropriate action," including commencement of litigation under c. 93A, when notified by Department of Public Utilities of violation of chapter or department order).

General Laws c. 93B has been amended since the entry of judgment below to allow dealers or franchisees to seek injunctive relief for violations of that chapter. St. 1977, c. 717, §§ 3, 5. See note 3, *supra*. Dismissal of the complaint was proper at the time, but in light of the intervening statute, the judgment dismissing the complaint should be modified so as to be without prejudice to the plaintiff's right to file an amended complaint seeking appropriate relief under the new statute.

*So ordered.*