CABOT CORPORATION *vs.* RAYMOND F. BADDOUR & another.[1]

Suffolk. January 11, 1985. — May 8, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, & O'CONNOR, JJ.

*Consumer Protection Act,* Securities transactions. *Uniform Securities Act.*
*Statute,* Construction.

On certification of a question of law by a United States District Court, this
court limited its consideration to the question whether G. L. c. 93A was
applicable to securities transactions, even though the question whether
Federal securities laws preempted application of G. L. c. 93A to the
transaction at issue was also briefed and argued. [721]

General Laws c. 93A is not applicable to securities transactions regulated
under Federal securities law and G. L. c. 110A. [721-726]

QUESTION of law certified to the Supreme Judicial Court by
the United States District Court for the District of Mas-
sachusetts.

*Margaret R. Hinkle* (*Allan van Gestel* with her) for
Raymond F. Baddour.

*Meredith Peterson Tufts* for the plaintiff.

*Thomas G. Shapiro,* for Richard H. Rosen, submitted a brief.

HENNESSEY, C.J. A judge of the United States District Court
for the District of Massachusetts has certified to us, pursuant
to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981),
the following question of State law: "Does Chapter 93A of the
Massachusetts General Laws apply to conduct alleged to violate
Section 10 (b) of the Securities Exchange Act of 1934 and
Rule 10b-5 promulgated thereunder?" We answer the question:
"No."

The certified question arises in an action by the plaintiff, a
publicly held corporation, against the defendants Baddour and
Rosen, the chairman of the board of directors and the former

---

[1] Richard H. Rosen.

president of Energy Resources Co., Inc. (ERCO), respectively. The plaintiff contends that it was fraudulently induced to purchase ERCO stock by the defendants' misrepresentations and material omissions regarding the company's financial condition. Shortly after the purchase, ERCO filed for bankruptcy. The plaintiff's complaint alleges that the defendants' actions violated § 10 (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (1984), promulgated thereunder; constituted fraud, deceit, and negligent misrepresentation; and violated G. L. c. 93A, §§ 2 and 11. The plaintiff seeks actual damages of $1,400,000 or triple that amount, as provided in G. L. c. 93A, § 11, if the court should find that the defendants knowingly and wilfully committed unfair or deceptive trade practices in violation of c. 93A, § 2. The defendants moved to dismiss the c. 93A count, arguing that the statute does not apply to securities transactions. No action has been taken on their motions.

The defendant Baddour requested certification of the question now before this court. He contends that the Federal securities laws preempt application of c. 93A to the transaction at issue; that application of c. 93A to securities sales would violate the commerce clause of the United States Constitution, Article 1, § 8, cl. 3, by impermissibly burdening interstate commerce; and that the Legislature did not intend c. 93A to apply to securities transactions.

Although Baddour has devoted considerable attention, in both his brief and argument, to the preemption issue, this court is not the proper forum to decide the matter. We see nothing in the certification request to suggest that we have been asked to consider preemption, which is a Federal question over which the Federal courts have original jurisdiction. *Shaw* v. *Delta Air Lines,* 463 U.S. 85, 96 n.14 (1983). Our role is necessarily limited to answering certified "questions of [the] law of this State." S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981). Therefore we restrict our inquiry to whether, as a matter of State law, c. 93A was intended to cover securities transactions of the type involved here.

On this issue, the judges of the United States District Court for the District of Massachusetts are divided. Their differences

focus upon the implications of G. L. c. 93A, § 2 (*b*), as amended by St. 1978, c. 459, § 2, which states that, in determining what constitutes "unfair or deceptive acts or practices in the conduct of any trade or commerce," courts are to be "guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5 (a) (1) of the Federal Trade Commission Act." Finding that the Federal Trade Commission Act has never been applied to securities transactions, which are regulated by the Federal Securities and Exchange Commission, 15 U.S.C. §§ 78a-d (1982), two of the Federal judges have concluded that this court would similarly limit the scope of c. 93A. See *Conkling* v. *Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 575 F. Supp. 760 (D. Mass. 1983); *Sweeney* v. *Keystone Provident Life Ins. Co.,* 578 F. Supp. 31 (D. Mass. 1983). Relying upon *Dodd* v. *Commercial Union Ins. Co.,* 373 Mass. 72, 75 (1977), and *Raymer* v. *Bay State Nat'l Bank,* 384 Mass. 310, 319 (1981), in which we held c. 93A applicable to the insurance and banking industries, respectively, four Federal judges have held that we would similarly expand the scope of c. 93A to encompass securities transactions, despite the guidelines set out in c. 93A, § 2 (*b*). *Hickey* v. *Howard,* 598 F. Supp. 1105 (D. Mass. 1984). *Sullivan* v. *Dean Witter Reynolds, Inc.,* No. 82-3300, slip op. at 8-9 (D. Mass. June 9, 1983).[2] *Mitchelson* v. *Aviation Simulation Technology, Inc.,* 582 F. Supp. 1 (D. Mass. 1983). *Kennedy* v. *Josephthal & Co.,* No. 82-913, slip op. at 8-11 (D. Mass. June 29, 1982).

We do not agree that *Dodd* and *Raymer* provide precedent for extending the reach of c. 93A to the securities field. While insurance and banking are "areas in which the states have long played a primary role in regulation . . . [a]t least since 1933, federal law has largely superseded state regulation of securities

[2] Although *Sullivan* v. *Dean Witter Reynolds, Inc., supra,* dealt with commodities trading, the judge in that case stated that "[t]here is nothing in the Supreme Judicial Court's interpretations of ch. 93A that would justify varying treatment of commodities trading and securities violations. Accordingly, I conclude that the Massachusetts courts would allow a 93A action for commodities trading violations."

transactions." *Conkling, supra* at 761. Thus, although we have applied c. 93A to industries not subject to the Federal Trade Commission Act, such industries have been primarily regulated by the State. See *Dodd, supra* at 79 n.6 ("FTCA § 5 (a) (1) does not cover Massachusetts insurance practices *because* these practices are subject to Massachusetts regulation" [emphasis in original]).

In the case of securities transactions, there is additional evidence that the Legislature did not intend c. 93A to regulate the field. On July 9, 1972, by St. 1972, c. 614, § 2, the Legislature enacted c. 93A, § 11, which provides for injunctive relief, damages, attorneys' fees, and costs to any person who engages in the conduct of any trade or commerce and suffers injury as a result of "an unfair method of competition or an unfair or deceptive act or practice." Section 11 further states that "recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was . . . willful or knowing."

Just four days later, on July 13, 1972, the Legislature, by St. 1972, c. 694, § 1, enacted G. L. c. 110A, the Uniform Securities Act, which is derived from and is to be coordinated with the Federal securities laws. G. L. c. 110A, § 415. General Laws c. 110A provides a comprehensive regulatory scheme for the registration and sale of securities. Section 101 prohibits fraud in connection with the sale or purchase of any security in language substantially the same as that employed in the Federal Securities Act of 1933, 15 U.S.C. § 7q (a) (1982). Section 102 prohibits fraudulent practices on the part of investment advisors. The sanctions for violations of these sections include injunctive proceedings initiated by the Secretary of the Commonwealth (§ 408), and criminal prosecution for wilful violations (§ 409).[3] In § 410, the Legislature established a

---

[3] General Laws c. 110A, § 410 (*h*), states in part that "this chapter does not create any cause of action not specified in this section." The intent of this proviso was evidently to preclude the creation of an implied private right of action in §§ 101 and 102. See Uniform Securities Act, § 101, Commissioners' Note, 7A U.L.A. 568-569 (1956) (amended 1958); *Mar-*

private right of action[4] for persons induced to purchase securities "by means of any untrue statement of a material fact or any omission to state a material fact." The defrauded purchaser "may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security . . . ." If he has disposed of the security, the purchaser is entitled to sue for damages in the amount he would have recovered upon a tender less the value he received upon disposition. Unlike G. L. c. 93A, §§ 9 and 11, there is no provision in c. 110A for the recovery of punitive or multiple damages. Nor may an aggrieved individual seek injunctive relief.

In *Reiter Oldsmobile, Inc.* v. *General Motors Corp.,* 378 Mass. 707 (1979), we considered whether a plaintiff was entitled to injunctive relief under c. 93A, § 11, where the action complained of, unfair competition in the automotive industry, was specifically prohibited by G. L. c. 93B, § 3. Assuming that the defendant's conduct violated both the general provisions of c. 93A, § 2 (*a*), and the more specific provisions of c. 93B, § 3 (*a*), we held that the latter statute prescribed the plaintiff's remedies. We noted that c. 93B, like c. 110A, "was enacted after c. 93A and applies specifically to unfairness in one industry." *Id.* at 711. At the time the plaintiff in *Reiter* commenced its action, c. 93B, § 12, did not provide for injunctive relief. *Reiter, supra* at 709.[5] "The two statutes may overlap

---

*garet Hall Found., Inc.* v. *Atlantic Fin. Management,* 572 F. Supp. 1475, 1483 (D. Mass. 1983) (c. 110A, § 410 [*a*], does not specifically provide for a private right of action under either § 101 or § 102).

[4] Other jurisdictions which have adopted the Uniform Securities Act recognize a private right of action under the sections analogous to c. 110A, § 410. See, e.g., *Noland* v. *Gurley,* 566 F. Supp. 210, 215 (D. Colo. 1983); *Colonial Bank & Trust Co.* v. *American Bankshares Corp.,* 478 F. Supp. 1186, 1190 (E.D. Wis. 1979), aff'd sub nom. *Cahill* v. *Ernst & Ernst,* 625 F.2d 151 (7th Cir. 1980); *Held* v. *Product Mfg. Co.,* 286 Or. 67 (1979).

[5] Before the appeal in *Reiter, supra,* reached this court, the Legislature, by St. 1977, c. 717, § 5, amended c. 93B, § 12, and in a new § 12A, provided

in their coverage, but in the case of a conflict, the provisions of the specific statute must govern. . . . To hold otherwise would be to overlook the careful limitation on private remedies in c. 93B and render much of the statute surplusage." *Id.* at 711. We distinguished the result in *Reiter* from that reached in *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 76-78 (1977), reasoning that "[u]nlike c. 93B, c. 176D made no provision for private actions," and therefore the latter did not comprehensively regulate unfair or deceptive insurance practices. *Reiter, supra* at 711.

It is clear that the Uniform Securities Act was intended to provide comprehensive regulation of the securities field. See *Giordano* v. *Auditore,* 355 Mass. 254, 257 (1969) (Sale of Securities Act, predecessor to the Uniform Securities Act, was intended as a comprehensive regulatory scheme). It differs from c. 93A in several critical respects,[6] including its limitation on private rights of action and the nature and scope of relief provided. Having enacted c. 93A, § 11 — which allows an unlimited private right of action, injunctive relief, and multiple damages for wilful statutory violations — only four days before enacting the carefully crafted remedial provisions of c. 110A, the Legislature was presumably aware of the import of such differences. It is unlikely that the Legislature intended to allow

---

for injunctive relief while at the same time eliminating the right to receive multiple damages for wilful statutory violations.

[6] We note the existence of additional differences between G. L. c. 93A and the Federal securities laws, after which c. 110A is patterned, with regard to disclosure duties and standards of fault. Compare *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 51 (1979) (under c. 93A, nondisclosure is deceptive "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted"), with *Chiarella* v. *United States*, 445 U.S. 222, 227-230 (1980) (duty to disclose under § 10 [b] arises from existence of fiduciary relationship between corporate insiders and stockholders). Compare *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 703-704 (1975) (for liability under c. 93A "it is not necessary to establish that the defendant knew that the representation was false"), with *Ernst & Ernst* v. *Hochfelder*, 425 U.S. 185, 201 (1976) (proof of scienter is required for liability under § 10 [b] and rule 10b-5). However, we regard these differences as more germane to a consideration of the Federal preemption issue.

a defrauded purchaser of securities to claim remedies under c. 93A which are provided neither in c. 110A, nor in its Federal counterpart, 15 U.S.C. § 78j (b) (1982). See *Hadley* v. *Amherst,* 372 Mass. 46, 51 (1977) (court must assume Legislature was aware of preexisting statute, and subsequent statute is to be interpreted in harmony with prior enactments). While G. L. c. 110A, § 410 (*h*), includes a saving clause preserving "rights and remedies . . . that may exist at law or in equity," other jurisdictions have interpreted this language as simply preserving a purchaser's right to pursue his common law remedies for fraud. See *Ging* v. *Parker-Hunter Inc.,* 544 F. Supp. 49, 52 (W.D. Pa. 1982); *Interlox Punch & Die Corp.* v. *Insilco Corp.,* 174 N.J. Super. 175, 177 (1980).

For these reasons we conclude that the Legislature did not intend c. 93A to apply to securities transactions of the type involved here, and, consequently, we answer "No" to the question that has been certified to us.