Milan **ARENT,** Plaintiff,

v.

**SHEARSON/AMERICAN EXPRESS, INC.,** Defendant.

**Civ. A. No. 85–1465–W.**

United States District Court, D. Massachusetts.

Nov. 25, 1985.

James C. Donnelly, Jr., Mirick, O'Connell, DeMallie & Lougee, Worcester, Mass., for plaintiff.

Barry Weiner, Richard Jacobson, Shapiro, Israel & Weiner, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiff in this action is Milan Arent. Defendants are Shearson/Lehman American Express, Inc. ("Shearson") and Craig

W. Corliss, a vice president and financial consultant at Shearson.

Plaintiff opened a securities account at Shearson, through Corliss, in December, 1981, in connection with which he also entered into a customer agreement. Plaintiff alleges that the defendants made misrepresentations to him regarding the value of his account and mismanaged funds invested with them, resulting in losses to plaintiff. Plaintiff seeks recovery for alleged violations of the federal securities laws, including both the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "1934 Act"), and for various pendent claims based on state law, including the Massachusetts consumer protection statute, Mass.Gen.Laws ch. 93A.

The matter is now before the court on defendants' motion to sever and compel arbitration of claims under the 1934 Act and state law and to stay proceedings pending the outcome of arbitration. In addition, defendants have moved to dismiss plaintiff's claim under ch. 93A. A hearing on both motions was held on October 3, 1985. For the reasons set forth below, the motions are allowed.

■ Plaintiff argues in opposition to defendants' motion to compel arbitration that the customer agreement which he signed, which included an arbitration clause, should be held unenforceable as an unconscionable contract of adhesion. Under the federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, a federal court is required to compel arbitration of claims where the parties have entered into a written agreement to arbitrate and there are arbitrable issues. 9 U.S.C. § 3; *see USM Corp. v. GKN Fasteners, Ltd.*, 574 F.2d 17, 19–20 (1st Cir. 1978).[1] The Supreme Court has interpreted the Arbitration Act to require that:

> Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not

permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). In resolving an application to stay proceedings under § 3 of the Arbitration Act, a court "may consider only issues relating to the making and performance of the agreement to arbitrate." *Id.* Moreover, under the Arbitration Act "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

■ The customer agreement signed by plaintiff at the time he opened his account with Shearson provides for the arbitration of disputes arising between the parties. Paragraph 13 of the agreement states:

> Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect.

Affidavit of Dennis J. Drescher at Ex.A. It is clear that plaintiff's allegations as to the validity of the contract concern the agreement as a whole, not simply the arbitration clause. Such claims are arbitrable and are therefore to be decided in the first instance by the arbitrator, rather than the court. Since plaintiff raises no issue directed specifically to the arbitration clause itself, plaintiff's claims as to the validity of the contract must be referred to arbitration.

■ Plaintiff next argues that his state law claims are exempt from arbitration because of the similarities between

---

1. No issue is raised as to waiver or as to the statutory requirement that "the applicant for the stay [be] not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Mass.Gen.Laws ch. 110A and the Securities Act of 1933. This contention, however, is flatly precluded by the holding of the Supreme Court in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) the Court held that an agreement to arbitrate claims under § 12(2) of the 1933 Act, 15 U.S.C. § 77*l* (2), could not be enforced in light of the anti-waiver provision of the Act, which declares void any stipulation waiving compliance with provisions of the Act. 15 U.S.C. § 77n. *See Wilko,* 346 U.S. at 434–35, 74 S.Ct. at 186–87. State law claims, however, stand on an entirely different footing. The analysis in *Wilko* has been applied only to securities claims arising under federal, not state, law. State law claims have been held to be subject to arbitration where there is a valid agreement to arbitrate between the parties. *See, e.g., Surman v. Merrill Lynch, Pierce, Fenner & Smith,* 733 F.2d 59, 61–62 (8th Cir.1984) ("The bar to agreements that would compel arbitration of federal securities law claims is limited to claims expressly arising under the federal securities laws"). In *Byrd* the Court, looking to the congressional policy in favor of arbitration, as expressed in the federal Arbitration Act, and the mandatory language of the Act, held that:

> [T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.

470 U.S. at ——, 105 S.Ct. at 1241. *Byrd,* therefore, confirms the arbitrability of state law claims and makes clear that federal courts are mandated by the Arbitration Act to compel arbitration of pendent claims where there is a valid agreement to arbitrate between the parties. Plaintiff's claims based on state law must therefore be referred to arbitration.

The more significant issue raised by plaintiff is whether claims based on the 1934 Act should be held subject to arbitration under the customer agreement. In *Wilko,* the Supreme Court held that claims under § 12(2) of the 1933 Act were not subject to arbitration. *Wilko,* 436 U.S. at 438, 74 S.Ct. at 188–89. Although the holding of the Court in *Wilko* was limited to the 1933 Act, courts have applied the *Wilko* analysis to claims based on the 1934 Act as well. *Surman,* 733 F.2d at 61; *Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 693 F.2d 1023, 1025–26 (11th Cir. 1982); *DeLancie v. Birr, Wilson & Co.,* 648 F.2d 1255, 1258–59 (9th Cir.1981); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore,* 590 F.2d 823, 827–29 (10th Cir. 1978); *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith,* 558 F.2d 831, 833–35 (7th Cir.1977); *Sibley v. Tandy Corp.,* 543 F.2d 540, 543 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532, 536–37 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976).

The Supreme Court, however, has on at least one occasion expressed reservations as to the applicability of *Wilko* to claims under the 1934 Act. In *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 513–14, 94 S.Ct. 2449, 2454–55, 41 L.Ed.2d 270 (1974), *rehearing denied,* 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974), the Court, in the context of an international contract, distinguished provisions of the 1933 and 1934 Acts. In particular, the Court noted that in § 12(2) of the 1933 Act Congress provided defrauded purchasers of securities with the "special right" of a private remedy for civil liability, distinct from the common law right of action for fraud. There is no counterpart to § 12(2) in the 1934 Act and neither § 10(b) nor Rule 10b–5 promulgated under that section creates a private remedy, 15 U.S.C. § 78j(b); rather, the right of action under § 10(b) is judicially implied. *See J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). In addition, the 1933 Act contains a broad jurisdictional provision, allowing suit to be brought in both state and federal courts, whereas under the 1934 Act federal

courts have exclusive jurisdiction, thus limiting a plaintiff's choice of forum. *Cf.* 15 U.S.C. § 77v; 15 U.S.C. § 78aa. *See Scherk,* 417 U.S. at 513–16, 94 S.Ct. at 2454–56. These considerations were reiterated by Justice White in his concurring opinion in *Byrd.* Because of the significant differences between the 1933 and 1934 Acts Justice White stated that *"Wilko's* reasoning cannot be mechanically transplanted to the 1934 Act." *Byrd,* 470 U.S. at ——, 105 S.Ct. at 1244 (J. White concurring). The question of the applicability of *Wilko* to claims under the 1934 Act, Justice White concluded, "remains open and the contrary holdings of the lower courts must be viewed with some doubt." *Id.*[2]

Although the question whether *Wilko* applies to claims under the 1934 Act was not before the Court in *Byrd,* courts have interpreted *Byrd* to indicate that *Wilko* is not controlling as to claims under the 1934 Act. *See Byrd,* 470 U.S. ——, 105 S.Ct. at 1240 n. 1. Several courts have held, on the strength of *Byrd,* that claims arising under the 1934 Act are subject to arbitration. *McMahon v. Shearson/American Express, Inc. et al.,* 618 F.Supp. 384 (S.D.N.Y.1985); *Ross v. Mathis,* 624 F.Supp. 110 (N.D.Ga. 1985); *Oliver v. Harris, et al.,* No. CV184–93 (S.D.Ga. Aug. 29, 1985); *Jarvis v. Dean Witter Reynolds, Inc.,* 614 F.Supp. 1146 (D.Ver.1985); *Byrd v. Dean Witter Reynolds, Inc.* (current) Fed.Sec.L.Rep. (CCH) ¶ 92,225 (S.D.Cal. July 8, 1985); *Mann v. Foster & Marshall/American Express, Inc.,* No. C84–925D (W.D.Wash. May 24, 1985); *Greenstein v. First Biscayne*

*Corp., et al.,* No. 82–0584 (S.D.Fla. May 16, 1985); *Walch, et al. v. Dean Witter Reynolds, Inc., et al.* (current) Fed.Sec.L.Rep. (CCH) ¶ 92,060 (M.D.Fla. April 25, 1985).[3]

■ The extension of *Wilko* to claims under the 1934 Act is difficult to reconcile with the clear congressional policy favoring the resolution of disputes by arbitration. *See Wilko,* 346 U.S. at 438, 74 S.Ct. at 188–89. Recent opinions of the Court, including *Byrd,* have emphasized the importance of the federal policies expressed in the Arbitration Act. *See, e.g., Byrd,* 470 U.S. ——, 105 S.Ct. at 1243, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* —— U.S. ——, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985); *Moses H. Cone Memorial Hospital* 460 U.S. at 24–25, 103 S.Ct. at 941–42. The court in *Byrd* determined from the legislative history of the Arbitration Act that:

> The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation.....

*Id.* at 1243. In light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hospital,* 460 U.S. at 24, 103 S.Ct. at 941, and the distinctions articulated by the Court between the 1933 and 1934 Acts, the court holds that *Wilko* should not be extended to claims under the 1934 Act.[4] Plaintiff's 1934 Act

---

**2.** Courts have noted that "Congress appears to have accepted the view that *Wilko v. Swan* applies in the 10b–5 context." *Ayres,* 538 F.2d 532 (3rd. Cir.1976); *see* H.R.Rep. No. 94–229, 94th Cong., 1st Sess., at 111 (1975), *reprinted in* 1975 U.S.Code Cong. & Ad.News at 321, 342. Congress' reference to "existing law, as articulated in *Wilko v. Swan,* " is at best ambiguous. By its terms it is limited to acknowledgement of the principle articulated in *Wilko,* that claims under § 12(2) of the 1933 Act are not subject to arbitration. Insofar as the reference occurs in connection with legislative action on a different section of the 1934 Act, it is extremely indirect evidence of legislative ratification.

**3.** Other courts have continued, since *Byrd,* to hold that claims under the 1934 Act are nonar-

bitrable. *See, e.g., Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* (current) Fed.Sec. L.Rep. ¶ 92,276 (W.D.Pa. April 19, 1985); *Dini v. Kearney, et al.,* No. 84–4138–T (D.Mass. May 23, 1985).

**4.** Plaintiff notes that 17 C.F.R. § 240.15C2–2(a) provides that:

> It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws....

Further provisions of the regulation enumerate circumstances under which a broker or dealer

claims must therefore be referred to arbitration.

Defendants have also moved to dismiss count V of the complaint, which alleges a claim under Mass.Gen.L. ch. 93A. The Supreme Judicial Court has recently determined that ch. 93A does not apply to securities transactions. *Cabot Corp. v. Baddour*, 394 Mass. 720, 477 N.E.2d 399 (1985). *Cabot Corp.* is controlling on this issue, and plaintiff's claims under ch. 93A must therefore be dismissed.

In addition, plaintiff alleges claims under Mass.Gen.Laws ch. 110A, §§ 101, 102 and ch. 231, § 85J. Sections 101 and 102 of ch. 110A do not give rise to a private cause of action. Section 410(a) of that chapter does not specifically provide for a private right of action under either section. *See Cabot Corp.*, 394 Mass. at 723 n. 3, 477 N.E.2d 399; *Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.*, 572 F.Supp. 1475, 1483 (D.Mass.1983). Plaintiff's claims under ch. 110A, §§ 101, 102 must therefore be dismissed.

Section 85J of ch. 231 states a cause of action for a purchaser of personal property against the seller. Although the Massachusetts courts have not determined the issue, a federal district court has held that "a broker or advisor who purchases and sells securities on a client's behalf cannot be considered a seller of personal property for the purposes of liability to the client under § 85J." *Margaret Hall Foundation*, 572 F.Supp. at 1475. This court agrees. Plaintiff's claim under ch. 231 § 85J must therefore be dismissed.

Accordingly, defendants' motion to compel arbitration of plaintiff's claims under the 1934 Act and state law is hereby ALLOWED. Defendants' motion to dismiss the claim under Mass.Gen.L. Ch. 93A, count V, is hereby ALLOWED. For the reasons stated above, plaintiff's claims under Mass.Gen.L. ch. 110A §§ 101, 102 and ch. 231, counts IV and VI, are hereby DISMISSED.

The parties are hereby directed to proceed to arbitration in accordance with the terms of the agreement. Pursuant to 9 U.S.C. § 3, the court hereby STAYS this proceeding as to plaintiff's arbitrable claims pending the outcome of arbitration.

The court believes that the interests of judicial economy indicate the desirability of staying proceedings in this court concerning the non-arbitrable 1933 Act claims pending the conclusion of the required arbitration of other claims. The court hereby STAYS such proceedings, provided that this decision will be reconsidered upon request of either party made by December 20, 1985.

SO ORDERED.

---

"shall not be in violation of paragraph (a) of this section with respect to any agreement entered into with a public customer prior to December 20, 1983," provided required disclosure is made to the customer. 17 C.F.R. § 240.15C2-2(b),(c).

No violation of this provision is alleged by plaintiff, so that no issue under the regulation is properly before the court. Plaintiff argues, however, that compelling arbitration of 1934 Act claims would contravene the policy of the regulation. The scope of the Commission's authority is, of course, circumscribed by the language of the statute; it is "the power to adopt regulations to carry into effect the will of Con-

gress as expressed by the statute." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213–14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976); *see Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 n. 18, 99 S.Ct. 2479, 2489–90 n. 18, 61 L.Ed.2d 82 (1979). Questions involving the interpretation of legislative intent are properly addressed to the courts. *Id.* The regulation may presuppose the judicial holdings that claim under the 1934 Act as well as the 1933 Act are nonarbitrable. It is, in any case, not at all certain that the arbitrability of claims is a determination to be made in the first instance by the Commission, rather than the courts. *See, e.g., Mitsubishi*, 105 S.Ct. at 3354–55.