849 F.2d 388
 SPINNER CORPORATION, a Utah corporation, et al.,
Plaintiff/Counterclaim-defendants,
v.
PRINCEVILLE DEVELOPMENT CORPORATION, a Colorado corporation,
Defendant/Counter-plaintiff/Appellant.
v.
MORGAN, OLMSTEAD, KENNEDY & GARDNER, INC., Counter-defendant/Appellee.
 No. 87-2076.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 15, 1988.
Decided June 8, 1988.
As Amended July 1, 1988.
 
 Edward A. Jaffe, Thomas Yamachika, Honolulu, Hawaii, for defendant/counter-plaintiff/appellant.
 Martin C. Washton, Elisabeth B. Long, Gibson, Dunn & Crutcher, Los Angeles, Cal., for counter-defendant/appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before SNEED, HUG and KOZINSKI, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Princeville Development Corp. (Princeville) appeals the district court's dismissal of its "baby" FTC Act claim under Haw.Rev.Stat. Sec. 480-2 against Morgan, Olmstead, Kennedy, and Gardner Inc. (Morgan Olmstead). We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 In late 1985, Spinner Corp. launched a hostile tender offer against Princeville. Morgan Olmstead served as Spinner's investment banker and advisor. At approximately the same time, Morgan Olmstead was attempting to negotiate an agreement to act as Princeville's investment advisor for a private placement of convertible subordinated debentures. During these negotiations, Morgan Olmstead received confidential information from Princeville. Morgan Olmstead never revealed that it was advising Spinner at the same time. Excerpt of Record (E.R.) tab 175, at 8.
 
 
 3
 Sometime later, despite a confidentiality agreement with Princeville, Morgan Olmstead allegedly turned over to Spinner the confidential information it had received from Princeville. Princeville apparently became aware of this fact during the discovery phase of litigation between Spinner and Princeville which was brought by Spinner to invalidate anti-takeover provisions that Princeville had adopted earlier. Princeville counterclaimed for violations of the Williams Act and deceit under Hawaii's baby FTC Act, Haw.Rev.Stat. Secs. 480-2, 480-13 (1985).
 
 
 4
 In November 1986, Morgan Olmstead moved to dismiss portions of Princeville's counterclaim. On January 30, 1987 the district court, Judge Owen Panner presiding, granted Spinner and Morgan Olmstead's motion to dismiss the baby FTC Act claim for failure to state a claim. E.R. tab 227, at 3. The remaining claims were settled and only the dismissal of the baby FTC Act claim is on appeal. The appeal was timely filed on February 27, 1987.
 
 II.
 STANDARD OF REVIEW
 
 5
 Our standard of review both with respect to dismissal for failure to state a claim and construction of Hawaii state law is de novo. Sax v. World Wide Press, Inc., 809 F.2d 610, 613 (9th Cir.1987); Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1423 (9th Cir.1986); In re Mclinn, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc).
 
 III.
 JURISDICTION
 
 6
 The district court had jurisdiction of the Williams Act claims under 15 U.S.C. Sec. 78aa and took pendent jurisdiction of the baby FTC Act claim. This court has jurisdiction under 28 U.S.C. Sec. 1291 (1982).
 
 IV.
 DISCUSSION
 
 7
 Princeville contends that Morgan Olmstead's release of confidential information in the context of a securities transaction violates Hawaii's baby FTC act, Haw.Rev.Stat. Sec. 480-2 (1985). The district court dismissed Princeville's claims under the baby FTC act "because said section does not apply to securities transactions." E.R. tab 227, at 3. That act makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." This statute, enacted in 1965, was modeled after the Federal Trade Commission Act[1] and was an "addition to the state's antitrust arsenal that outlaws unfair methods of competition and unfair or deceptive trade practices in sweeping terms." Island Tobacco Co. v. R.J. Reynolds Tobacco Co., 63 Haw. 289, 300, 627 P.2d 260, 268 (1981).
 
 
 8
 A major difference between the state and federal versions is that private individuals are specifically authorized to make claims under the state act, and may be awarded the greater of $1000 or treble damages. Sec. 480-13(1). The act has two other features of particular significance to this case. First, the legislature dictated that the act be "construed in accordance with judicial interpretations of similar federal antitrust statutes." Sec. 480-3. Thus, courts must refer to judicial interpretations of Sec. 5(a)(1) of the FTCA, 15 U.S.C. Sec. 45(a)(1), before applying Sec. 480-2. Second, the act specifically exempts certain groups and activities from its coverage such as labor organizations and insurance transactions. The act does not, however, explicitly exempt securities transactions from coverage. Princeville's claims arise from securities transactions.
 
 
 9
 We must decide, therefore, whether the act applies to conduct ordinarily associated with securities transactions. Our task is made difficult because the Hawaii courts have not addressed the issue. We are obliged to ascertain what the Hawaii Supreme Court would do if confronted with the same question.
 
 
 10
 Morgan Olmstead argues that Hawaii caselaw rejects the use of Sec. 480-2 in the securities context. It cites Cecil v. Paine Webber Jackson & Curtis, Inc., Civ. No. 67492 (Haw.Cir.Ct. filed Aug. 23, 1983). In that case a Hawaii circuit judge granted Paine Webber's motion to dismiss a Sec. 480-2 claim for misrepresentations in the sale of securities. The court gave no reason for the dismissal. Thus, Morgan Olmstead relies heavily on Paine Webber's brief in Cecil. The arguments in that brief are similar to the ones made in Morgan Olmstead's brief in the instant case. Without a written opinion explaining the decision, however, Cecil has little or no precedential value for this court.[2]
 
 
 11
 Princeville, on the other hand, points to several federal district court cases in which the courts may have implicitly accepted the idea that the statute covers securities law claims. In Bush v. Rewald, 619 F.Supp. 585, 609-10 (D.Haw.1985), a federal district court refused to dismiss a claim under Sec. 480-2 for securities fraud. The issue the court addressed, however, was whether the suit was in the public interest as required by Sec. 480-13. No question of the applicability of Sec. 480-2 to securities questions was raised or discussed by the court. In Cunha v. Ward Foods, Inc., 545 F.Supp. 94, 102 (D.Haw.1982), the district court also ruled on a "public interest" requirement of Sec. 480-13 and appeared to assume that a Sec. 480-2 claim could encompass activities in the securities field. We are not persuaded that either of these federal district court opinions satisfactorily addresses the issue of the applicability of Sec. 480-2 to securities transactions conduct. Thus, to determine the scope of Sec. 480-2 we must examine the language of the statute and the legislative intent motivating it.
 
 
 12
 Princeville relies on the plain reading of the statute, which gives no indication that securities transactions are not covered. It emphasizes that the statute makes specific exemptions for some activities but does not exempt securities transactions. It is an elementary principle of statutory construction that when a statute contains specific exceptions from coverage, it cannot be read to include other exceptions. Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980); 2A Sutherland, Statutory Construction Sec. 47.23, at 194 (C. Sands 4th ed. 1984). This is a strong argument.
 
 
 13
 Morgan Olmstead, however, checks in with an even more compelling argument. It points to the provision of the statute requiring that it be construed in accordance with the judicial interpretation of similar federal antitrust statutes. See Sec. 480-3. As noted above, the Hawaii Act is almost identical to Sec. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. Sec. 45(a)(1) (1982). The Federal Trade Commission Act has not been applied in a securities context since 1923. FTC v. Cox & Cox, FTC Docket Nos. 293, 402, aff'd (5th Cir.1923),discussed in 2 Trade Reg.Rep. (CCH) p 7851, at 12,728 (1971). Morgan Olmstead concludes this is because such questions have been governed by the SEC since its creation in the 1930s. It also points to the absence of any federal judicial decision after that time that applied the Federal Trade Commission Act to a securities transaction. Dismissal by the district court in this case is in accordance with judicial interpretations of similar federal antitrust statutes.
 
 
 14
 We acknowledge that the meaning of the Hawaii statute turns on the intent of its legislature. We conclude that the primary intent of the legislature was to protect consumers from unethical business practices resulting in relatively small commercial injuries. The manner in which the legislature framed the statute demonstrates this primary intent. The statute is designed to provide encouragement to people whose damages are relatively small by granting to them, if successful, treble damages and a minimum recovery of $1000. The legislative history supports this view. In discussing the purpose of the statute the House and Senate Standing Committee Reports in several places refer to motivating consumers with small grievances to sue businesses that engage in unfair or deceptive practices. House Standing Comm.Rep. No. 661, House Journal 882-83 (1969); Senate Standing Comm.Rep. No. 600, Senate Journal 1111 (1969). Actions involving securities, such as the ones alleged in this case, are not typically on the agenda of consumer advocates.
 
 
 15
 We recognize, however, that the Hawaii courts have permitted suits by one business against another using Sec. 480-2. Eastern Star, Inc. v. Union Bldg. Materials Corp., 712 P.2d 1148 (Haw.App.1985). We regard this as no more than recognition that a business can suffer the same misfortune as a consumer under some circumstances. It in no way demonstrates that securities transactions, already heavily regulated by both the federal government and the state of Hawaii, are embraced by the baby FTC act of Hawaii. The Hawaii legislature, to be specific, has enacted two acts involving securities transactions, the Hawaii Uniform Securities Act, Haw.Rev.Stat. Secs. 485-1 to 485-25 (1985 & Supp.1987), and the Hawaii Corporate Take-Overs Act, Haw.Rev.Stat. Secs. 417E-1 to 417E-11 (1985). The acts complained of by the plaintiffs in the instant case appear to be encompassed by one or both of these statutes. See, e.g., Haw.Rev.Stat. Sec. 485-25(a) (general prohibition against fraud and deceit in connection with the purchase and sale of securities); Sec. 485-25(b) (prohibiting fraud and deceit by investment advisors); Haw.Rev.Stat. Sec. 417E-4 (prohibiting fraudulent, deceptive, or manipulative acts or practices in connection with corporate takeovers). Both acts provide specific forms of relief for injured plaintiffs in the area of securities law.
 
 
 16
 Hawaii's system of controlling activities surrounding securities and corporate takeover transactions is fairly elaborate in defining both impermissible conduct and actionable claims and in setting forth the nature of available relief. To construe Sec. 480-2 to give plaintiffs yet another remedy is inconsistent with a coherent legislative intent.
 
 
 17
 Several state and federal courts have come to similar conclusions when addressing the applicability of similar statutes to securities transactions. They have relied heavily upon the existence of state securities laws and statutory language similar to that in the Hawaii statute which directs that act be interpreted as is Sec. 5(a)(1) of the FTCA. In Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 510 A.2d 972 (1986), the Supreme Court of Connecticut held that Connecticut's baby FTC act did not apply to the purchase and sale of securities. The statutory language of the Connecticut and Hawaii acts is virtually identical. Both statutes by their plain language broadly encompass any unfair or deceptive acts or practices "in the conduct of any trade or commerce."[3]
 
 
 18
 The Connecticut Supreme Court noted that "the question of statutory construction is a close one," id. at 178, 510 A.2d at 976, but went on to frame the issue in this way: "The crucial question is not whether [securities] transactions are exempt from [the baby FTC act] but whether [the baby FTC act] itself can fairly be interpreted to encompass such transactions in the first instance." Id. The court decided that the statute's command that the courts look to interpretations of the federal FTCA was dispositive.[4]
 
 
 19
 In Cabot Corp. v. Baddour, 394 Mass. 720, 477 N.E.2d 399 (1985), the same question was certified to the Supreme Court of Massachusetts by a United States district court. As in Hawaii and Connecticut, the baby FTC act in Massachusetts provides that in determining what constitutes "unfair or deceptive acts or practices in the conduct of any trade or commerce," courts are to be "guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act." Mass.Gen.L. ch. 93A Sec. 2(b). The court took this as evidence that the legislature did not intend to regulate the field of securities in its baby FTC act.[5]
 
 
 20
 The court also noted that the state had passed a securities act only days after passing the baby FTC act. Because the securities statute more specifically applied to the conduct in issue, the court decided that its provisions should govern. Thus, it was "unlikely that the Legislature intended to allow a defrauded purchaser of securities to claim remedies under [the baby FTC act] which are provided neither in [the state securities act], nor in its federal counterpart." 477 N.E.2d at 402.
 
 
 21
 Lindner v. Durham Hosiery Mills, Inc., 761 F.2d 162 (4th Cir.1985), is the only federal circuit court case in which the issue has been confronted. The Fourth Circuit's analysis is highly persuasive:
 
 
 22
 We think that the North Carolina Supreme Court would hold, if presented with this issue, that securities transactions are beyond the scope of [the baby FTC act]. Our decision is consistent with [the baby FTC act's] purpose to protect the consuming public, the North Carolina cases holding that other federal or state statutes may limit the scope of [the baby FTC act], the absence of any other state court decision holding that securities transactions are subject to a similar Unfair Trade Practices Act, and the absence of any federal court decision holding that securities transactions are subject to Sec. 5(a)(1) of the FTC Act. We do not believe that the North Carolina legislature would have intended [the baby FTC act], with its treble damages provision, to apply to securities transactions which were already subject to pervasive and intricate regulation under the North Carolina Securities Act, as well as the Securities Act of 1933, and the Securities Exchange Act of 1934. Furthermore, to hold that [the baby FTC act] applies to securities transactions could subject those involved with securities transactions to overlapping supervision and enforcement by both the North Carolina Attorney General, who is charged with enforcing [the baby FTC act], and the North Carolina Secretary of State, who is charged with enforcing the North Carolina Securities Act.
 
 Id. at 167-68 (citations omitted).[6]
 
 23
 We conclude that the Hawaii Supreme Court, if confronted with the question whether Hawaii's baby FTC act applies to claims arising from securities transactions, would hold that it does not. We are persuaded by the structure of the statute, the legislative command to refer to federal FTCA jurisprudence, the existence of Hawaii statutes that cover securities transactions, and the trend of the relatively few applicable judicial decisions.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The federal statute states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." 15 U.S.C. Sec. 45(a)(1) (1982)
 
 
 [2]
 This court, of course, is bound to follow the law of Hawaii as determined by statute or a decision of its supreme court. Furthermore, it has been said that this court must follow the decision of an intermediate state court unless other persuasive authority convinces us that the state supreme court would decide otherwise. Richardson v. United States, 841 F.2d 993, 996 (9th Cir.1988) (citing West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). Whether such a rule goes beyond the "proper regard" we have been commanded to give intermediate state court opinions is open to some question. Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); see id. at 477, 87 S.Ct. at 1788 ("absent a recent judgment of the State's highest court, state cases are only data from which the law must be derived") (Harlan, J., dissenting). The unreported decision of a state trial court, however, is not binding on us, although we may rely on it to the extent its reasoning is persuasive. MGM Grand Hotel, Inc. v. Imperial Glass Co., 533 F.2d 486, 489 n. 5 (9th Cir.) (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948)), cert. denied, 429 U.S. 887, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976)
 
 
 [3]
 Both acts contain express exemptions from coverage and neither exempts securities. Both are liberally construed to best effectuate their purpose of protecting victims. Both states' securities statutes expressly do not preempt other rights and remedies existing at law or equity. Finally, each state's baby FTC act commands courts applying the act to be guided by judicial interpretations of section 5(a)(1) of the federal act
 
 
 [4]
 Application of the FTC lodestar to this case leads us to conclude that [the baby FTC act] does not apply to deceptive practices in the purchase and sale of securities. The FTC has never undertaken to adjudicate deceptive conduct in the sale and purchase of securities, presumably because such transactions fall under the comprehensive regulatory umbrella of the Securities and Exchange Commission. Despite the breadth of the language of Sec. 5(a)(1) of the FTC Act, which, read literally, would include security transactions, the plaintiff has cited no case in which the FTC or a federal court has applied the FTC Act to a securities transaction and we have found none.... Consequently, in this case, taking our guidance from the FTC, we must construe [the baby FTC act] as not purporting to cover transactions for the purchase and sale of securities. 200 Conn. at 180, 510 A.2d at 977 (citations and footnote omitted)
 
 
 [5]
 In reaching its decision, the court first discussed two federal district court opinions that had decided that the Massachusetts act applied to securities transactions. Those courts had reached their conclusions by analogy to Massachusetts cases that had extended the reach of the baby FTC act to cover insurance and banking despite the lack of FTC action in these fields. The Massachusetts Supreme Court disagreed with the analogy, distinguishing the insurance and banking decisions as those in which the state plays a primary role in regulation whereas, at least since the 1930s, federal law has superseded state regulation in the area of securities. 477 N.E.2d at 400-01
 
 
 [6]
 Baby FTC acts are applied to securities transactions in some states. Princeville's best case is State ex rel. Corbin v. Pickrell, 136 Ariz. 589, 667 P.2d 1304 (1983) (en banc), in which the Supreme Court of Arizona found that "the legislature intended the consumer fraud act to provide an additional avenue of relief to those aggrieved by securities act violations." Id. at 592, 667 P.2d at 1307. That court, however, based its understanding of legislative intent upon an amendment made to the baby FTC act that states, "The provisions of this article are in addition to all other causes of action, remedies and penalties available to this state." Id. The court took this amendment as a legislative reversal of an earlier state appellate court decision holding that violations of the securities act could not be the basis of a baby FTC act claim. The difference between this Arizona case and the instant one is that the Hawaii baby FTC act does not contain a similar savings clause
 Princeville has also cited several less helpful cases. It notes that the Texas baby FTC act is applicable in the securities context. In Texas, a plaintiff may not avail himself of the baby FTC act unless he is a "consumer," as defined by the act, who purchased or leased goods or services that are the subject of the complaint. Securities are not goods or services in Texas. See Portland Savings & Loan Assoc. v. Bevill, Bresler & Schulman Gov't Sec., Inc., 619 S.W.2d 241, 245 (Tex.Civ.App.1981). Services related to the sale of a security may, however, fall within the definition of services. FDIC v. Munn, 804 F.2d 860, 865 (5th Cir.1986). The Texas cases therefore discuss the definition of "consumer" and "goods and services" to decide whether the plaintiffs have stated causes of action. They do not discuss the issue of whether the baby FTC act can be used at all in the securities context: this is assumed. Girard v. Drexel Burnham Lambert, Inc., 805 F.2d 607 (5th Cir.1986); E.F. Hutton & Co. v. Youngblood, 708 S.W.2d 865 (Tex.Ct.App.1986) (expert tax advice and investment counseling as to taxable consequences of a transaction that otherwise would not have been made is a service), aff'd on other grounds, 741 S.W.2d 363 (Tex.1987); Nottingham v. General Am. Communications Corp., 811 F.2d 873 (5th Cir.) (services related to the sale of a security may be services covered by the baby FTC act when they also are objectives of the transaction), cert. denied, --- U.S. ----, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987). This assumption probably reflects the "laundry list" nature of the Texas baby FTC act, which specifically enumerates many types of fraud and misrepresentation.