Joseph BULGO, Plaintiff–Appellant,

v.

Frank MUNOZ, also known as Frank Munoz Martin, individually; Land & Construction Company, Inc., a Hawaii corporation; Paine Webber, Inc., formerly Paine, Webber, Jackson & Curtis, Inc.; Alex Lau, an individual, Defendants–Appellees.

Nos. 87–2297, 87–2646.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1988.

Decided Aug. 2, 1988.

John H. Boone, San Francisco, Cal., James M. Dombroski, Honolulu, Hawaii, for plaintiff-appellant.

Richard R. Clifton, Cades Schutte Fleming & Wright, Paul A. Lynch, Case & Lynch, Honolulu, Hawaii, for defendants-appellees.

Before BROWNING, SNEED, and TROTT, Circuit Judges.

SNEED, Circuit Judge:

Joseph Bulgo's second amended complaint set forth six claims of misconduct pertaining to a securities transaction against Frank Munoz (Munoz), Land and Construction Co. (L & C), PaineWebber, Inc. (PaineWebber) and Alex Lau (Lau). Numerous rulings were made by the district court and certain special verdicts were returned by the jury. The result is that Bulgo's claims were rejected for various reasons and by different means. We affirm in all respects.

## I.

## FACTS AND PROCEEDINGS BELOW

Bulgo's six claims were against two pairs of defendants-appellees. One pair consists of Munoz and his corporation, L & C. The second pair consists of PaineWebber and its former employee Lau.

Bulgo and Munoz have a long-standing business and personal relationship. Munoz is president of L & C which maintained a securities trading margin account with PaineWebber that, in the manner of such accounts, permitted the purchase of stock on credit. Munoz offered Bulgo the use of the margin account for Bulgo's securities transactions.

Defendant Lau was PaineWebber's broker in charge of the L & C account. On December 1, 1982, Bulgo placed an order with Lau on the L & C margin account for the purchase of 3000 shares of Mattel stock. On December 9, 1982, Bulgo gave L & C a check for $50,000.00 toward the purchase of the stock, and L & C paid PaineWebber $50,000.00.

The value of the Mattel stock dropped by nearly fifty percent within days of the purchase. Bulgo refused to satisfy the balance of the margin account when billed by L & C on March 21, 1983. Bulgo refused collection attempts by L & C for the balance. L & C ordered the stock sold on May 1, 1984 and billed Bulgo for the balance owed, $26,500.01.

Bulgo contends that he was the victim of a scheme, under which he placed a order for Mattel stock on November 19, 1982 with Lau who then failed to execute the order. Bulgo asserts Munoz thereafter placed an order for the 3,000 shares of Mattel stock on December 1, 1982 with the intention of capturing the profits from any appreciation of the stock. According to Bulgo, Munoz and Lau defrauded Bulgo of the $50,000 in order to replenish the equity in L & C's margin account. Bulgo asserts that he did not even know that he had placed a margin order until he received the March 21, 1983 bill for the balance of the margin purchase. Bulgo contends that after receiving the bill, he contacted another PaineWebber employee, Elliott Luke, who told Bulgo that the account had been transferred to another brokerage house and that Bulgo should let the stock rise in price. Bulgo asserts that he did not understand that he had been the victim of a scheme until March 1985.

Bulgo's first two claims, set forth in his second amended complaint, alleged the defendants made fraudulent misrepresentations to Bulgo to induce him to buy the stock in violation of, first, federal securities law and, second, common law. The third claim alleged that defendants made negligent misrepresentations to plaintiff. The fourth alleged defendants breached fiduciary duties they owed the plaintiff. The fifth alleged the defendants' conduct violated Hawaii's state securities statute (Haw. Rev.Stat. § 485–25) and Hawaii's unfair trade practices act (Haw.Rev.Stat. § 480–2). The sixth claim alleged that the defendants converted plaintiff's $50,000 to their own use and benefit.

Munoz and L & C brought cross-claims against PaineWebber and Lau who, in turn,

counterclaimed against Bulgo for contribution and cross-claimed against Munoz and L & C for contribution and indemnification. Munoz and L & C counterclaimed against Bulgo seeking recovery of the $26,500.01 balance from the margin purchase, plus costs and expenses.

On March 28, 1986, the district court dismissed Bulgo's unfair trade practices claim (§ 480-2) against PaineWebber on the ground that the statute does not apply to securities transactions. The district court at that point, however, refused to dismiss PaineWebber's counterclaim against Bulgo for contribution.

After denying summary judgment motions by both parties, a jury trial began on February 3, 1987. During the trial's course, the district court granted several directed verdicts, four of which Bulgo appeals. First, the district court granted a directed verdict against Bulgo's claim against Munoz and L & C under Hawaii's unfair trade practices act (§ 480-2). Next, the district court directed a verdict against Bulgo's claim under the Hawaii state securities statute (§ 485-25), because of a two-year statute of limitations period. Third, the district court directed a verdict against Bulgo's claims alleging fraud by Munoz and L & C. Fourth, the district court directed a verdict against Bulgo's claims for punitive damages against PaineWebber.

Bulgo's remaining claims (certain of those against PaineWebber and Lau) were submitted to the jury which, in a special verdict, found in favor of the defendants on all claims. The jury also found in favor of L & C on its counterclaim against Bulgo

for the balance of the margin purchase. The resulting judgment entered on March 23, 1987 provided for recovery of that sum from Bulgo, and dismissed the PaineWebber counterclaim for contribution as moot.

The district court subsequently denied Bulgo's motions for a judgment notwithstanding the verdict and for a new trial. Bulgo appeals each of these rulings by the district court and argues that improper jury instructions on comparative responsibility and conversion were given.[1] Bulgo also appeals the grant of attorney's fees and costs to L & C and Munoz.

## II.

## JURISDICTION

The district court had jurisdiction under section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 and the principles of pendent jurisdiction. This court has jurisdiction under 28 U.S.C. § 1291.

## III.

## STANDARD OF REVIEW

This case with its numerous issues compels the utilization of a potpourri of standards of review. They are as follows:

■ We review the district court's construction of state law *de novo*. *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir.1987). Thus, the applicability of Haw.Rev.Stat. § 480-2 is reviewed *de novo. See Spinner Corp. v. Princeville Development Corp.*, 849 F.2d 388 (9th Cir.

---

1. Bulgo's enumeration of errors appearing in his opening brief at pages 21–22 is as follows:

 1. The trial court erred in granting PaineWebber and Lau exemption from HRS Section 480-2;

 2. The trial court erred in denying Bulgo's motion to dismiss PaineWebber and Lau's counterclaim;

 3. The trial court erred in granting directed verdict against Bulgo as follows:

 (a) Bulgo's HRS Chapter 480 claims against Munoz and L & C;

 (b) Bulgo's state securities claims under Chapter 485 of the HRS;

(c) Bulgo's claims for federal securities fraud and common law fraud against L & C and Munoz;

(d) Bulgo's claim for punitive damages against PaineWebber.

 4. The trial court erred regarding the jury instructions, as follows:

 (a) Comparative fault;

 (b) Conversion and the counterclaims against Bulgo.

 5. The trial court erred in denying Bulgo's motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial.

 6. The trial court erred in awarding L & C and Munoz attorney's fees and costs.

1988). Similarly, we so review the district court's application of the Hawaii statute of limitations on the § 485-25 securities claim.

■ The clearly erroneous standard must be employed in reviewing the district court's award of attorney's fees to the appellees on the basis of Bulgo's bad faith. *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1298 (9th Cir.), *cert. denied,* 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). Once bad faith is determined, however, the amount awarded is reviewed for abuse of discretion. *Beaudry Motor Co. v. Abko Properties, Inc.,* 780 F.2d 751, 756 (9th Cir.), *cert. denied,* 479 U.S. 825, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986).

■ In reviewing jury instructions, the standard is "whether, viewing the jury instructions as a whole, the trial judge gave adequate instructions on each element of the case to ensure that the jury fully understood the issues." *Los Angeles Memorial Coliseum Comm. v. National Football League,* 726 F.2d 1381, 1398 (9th Cir.), *cert. denied,* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). Action by the district court concerning a motion for a new trial is reviewed for an abuse of discretion. *Robins v. Harum,* 773 F.2d 1004, 1006 (9th Cir.1985). Other issues are reviewed under our standard for directed verdicts. That standard is whether the evidence permits only one reasonable conclusion after viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in favor of that party. *Peterson v. Kennedy,* 771 F.2d 1244, 1256 (9th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187

(1986). We now turn to alleged erroneous actions of the district court.

## IV.

## UNFAIR TRADE PRACTICES ACT

■ The district court dismissed the § 480-2 claim against PaineWebber and Lau, and directed a verdict against the § 480-2 claim against Munoz and L & C because it believed this unfair trade practices statute was not intended to cover securities transactions. *See* Order Denying Motion for Reconsideration, Excerpt of Record (E.R.) tab 14 and E.R. tab 21, at 213. Bulgo asserts this was error. Last month, this court decided precisely this issue in *Spinner Corp. v. Princeville Development Corp.,* 849 F.2d 388 (9th Cir.1988). We concluded "that the Hawaii Supreme Court, if confronted with the question whether Hawaii's baby FTC act applies to claims arising from securities transactions, would hold that it does not." At 393.[2] The district court's dismissal and directed verdict regarding Bulgo's § 480-2 claims were proper.

## V.

## PAINEWEBBER'S COUNTERCLAIM FOR CONTRIBUTION

■ As already pointed out, the district court declined to dismiss PaineWebber's counterclaim against Bulgo for contribution. This was proper. Sufficient evidence to support the district court's refusal existed. Moreover, any possible error was harmless because the counterclaim was made moot as a result of the jury verdict.

**2.** Bulgo's counsel challenged *Spinner* during oral argument on the grounds that recent amendments to the Hawaii "baby" FTC act have changed the statute so that the Hawaii Supreme Court would apply it to securities transactions. Counsel cited a 1986 amendment to § 480-3.1, that added a savings clause. However, the district court properly found the 1986 amendment applied only to § 480-3.1 (civil penalties). The district court stated: "Plaintiff argues that the Legislature intended to signal that the remedies under 'Section 480' are cumulative to other remedies, such as those provided under the securities laws. However, plaintiff's attempt to blur the distinction between *section* 480-3.1 and

*chapter* 480 is unavailing." *See* Order Denying Motion for Reconsideration, E.R. tab 14, at 2.

Bulgo's counsel also cited a 1987 amendment to § 480-1 (chapter definitions). This amendment added the definition of consumer, as meaning "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in an investment." Even if the term investment can be read to include securities transactions, there is no indication that the legislature intended the 1987 amendment to apply retroactively to a 1982 transaction.

## VI.

### HAWAII STATE SECURITIES ACTS' STATUTE OF LIMITATIONS

The statute of limitations applicable to claims brought under Haw.Rev.Stat. § 485–25 is Haw.Rev.Stat. § 485–20. Bulgo argues that the two-year statute of limitations does not apply to his claim, because the 1985 amended version of § 485–20 extended the period to five years after the sale. He also contends that the statute was tolled as a result of his being "lulled" by PaineWebber into taking no action on the account. We reject both contentions.

#### A. *The 1985 Amendment of § 485–20*

At the time of the transaction, § 485–20 stated that no action could be brought for the recovery of the purchase price after two years from the date of the sale. The stock purchases took place on December 1, 1982 and the action was not filed until September 30, 1985, well beyond the two year limitations period.

■ The May 1985 amendment changed the limitations period to five years after the date of the sale or two years from the discovery of facts constituting the violation, but in any event, no more than seven years after the date of sale. Bulgo argues that his claim should be governed by this amendment. A state legislature can enlarge a limitation period and make it applicable to claims previously barred. We have stated: "It is the general rule that subsequent extensions of a statutory limitation period will not revive a claim previously barred. But the question is one of legislative intent...." *Davis v. Valley Distributing Co.,* 522 F.2d 827, 830 (9th Cir.1975) (citation omitted), *cert. denied,* 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977); *see Osmundsen v. Todd Pacific Shipyard,* 755 F.2d 730, 733 (9th Cir.1985).

Hawaii law also requires a legislative intent to have an amended statute of limitation operate retroactively. In *Doe v. Roe,* 67 Haw. 63, 65, 677 P.2d 468, 470 (1984), the Supreme Court of Hawaii stated: "Whether the extended limitation period revives a previously barred claim depends on the intent of the legislature." We have found no indication, either from the statute or the legislative record, that the Hawaii Legislature intended a retroactive application of the amendment. *See Bush v. Rewald,* 619 F.Supp. 585, 609 (D.Haw.1985) (applying without discussion the earlier version of § 485–20 to a transaction which occurred prior to the 1985 amendment).

The district court, proceeding on the assumption that the amendment was not applicable, decided from the facts and evidence that Bulgo knew or should have known by March 23, 1983 that he had a potential claim. Two years thereafter elapsed on March 23, 1985. Because this action was not filed until September 30, 1985, the district court invoked the statutory bar of limitations.

#### B. *Alleged "Lulling" by PaineWebber*

■ But Bulgo argues that the period should be extended because he was "lulled" by assurances from PaineWebber to wait and let the stock rise. He relies on *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 739 F.2d 1434, 1436 (9th Cir. 1984), which states: "Under California law, the statute of limitations may be tolled by a broker reassuring his client on concerns *relevant to the possible misrepresentation.*" (Italics added.) The plaintiff-client in *Vucinich* was advised over three years by her personal broker that she should open and continue to hold short positions in eleven securities, despite a relatively constant stock market.

To support his claim of "lulling," Bulgo contends that, after he received the bill for the amount due on the margin order, he called the PaineWebber broker in charge, Elliott Luke, and was informed that inasmuch as the account had been transferred to another brokerage house, PaineWebber did not have control of the stock. Bulgo asserts that Luke said he would not have recommended the Mattel purchase, but that Bulgo should wait for the stock price to rise. PaineWebber and Lau dispute Bulgo's assertion. Even assuming that Luke said this and that the law of California as stated in *Vuninich* is applied in this case,

advice recommending patience, regarding stock no longer in a broker's control, is not a reassurance "relevant to the possible misrepresentation." Bulgo was not "lulled" by assurances from PaineWebber. The limitation period should not be extended. The district court was correct in directing a verdict against Bulgo's § 485-25 claim.

## VII.

### THE FRAUD CLAIM AGAINST MUNOZ AND L & C

Bulgo asserts that the directed verdict against his claim of fraud against Munoz and L & C was erroneous because the court did not consider the evidence in the light most favorable to the plaintiff. He points primarily to the district court's stated assumption that the stock order was placed on December 1, 1982 instead of November 19, 1982 as Bulgo testified. Even if the district court erred in making this assumption, which we doubt, the use of the November 19 date would not obviate the fact that Bulgo failed to present evidence of fraud.

 To prove fraud a plaintiff must establish that the defendant made false representations of material fact, intended to induce plaintiff to act, the representations were made with knowledge of, or reckless disregard for, their falsity, and the plaintiff justifiably relied upon those false representations to his detriment. *In re Hawaii Corp.*, 567 F.Supp. 609, 630 (D.Haw.1983). Bulgo failed to identify or establish any false statements or representations made by Munoz with intent to induce Bulgo to act to his detriment. At trial, Bulgo testified that Munoz had not deceived him regarding the stock purchase, and that Munoz was not capable of such fraud. The district court was persuaded that Bulgo's own testimony settled the issue.

 Additionally, an actionable misrepresentation must relate to fact and cannot be based on an expression of opinion or a prediction. *See Stahl v. Balsara*, 60 Haw. 144, 149, 587 P.2d 1210, 1214 (1978). The evidence is clear that comments made by Munoz regarding the Mattel stock were only opinions. The fact is that Bulgo is an experienced businessman who made a decision to speculate in Mattel stock. Given these facts, Munoz's opinions cannot be interpreted as false representations of material fact. The directed verdict on the issue of fraud, therefore, was proper.

## VIII.

### THE CLAIM OF PUNITIVE DAMAGES AGAINST PAINEWEBBER

 Bulgo argues that the district court erred when it directed a verdict against him on his claim of punitive damages against PaineWebber. Bulgo appears to ignore that the jury found in favor of PaineWebber and employee Lau on the issue of liability. Any error related to a directed verdict for punitive damages could only be harmless. *See, e.g., Dixon v. Nationwide Mutual Ins. Co.*, 784 F.2d 1176, 1181 (4th Cir.), *aff'd*, 800 F.2d 422 (4th Cir.1986) (en banc).

 Moreover, Bulgo's claim, even were there liability, is untenable. He insists that the district court did not consider evidence regarding conversations between employees Lau and Luke, and with an officer of PaineWebber. Under Hawaii law, punitive damages may be recovered against a corporate defendant only if the corporation, through an officer, expressly or impliedly authorized or ratified its agent's tortious act. *Jenkins v. Whittaker Corp.*, 551 F.Supp. 110, 112 (D.Haw.1982). The conversations that Luke and Lau had with a corporate officer were subsequent to the stock purchase and merely related to Bulgo's complaint and PaineWebber's situation. Thus, the conversations were neither a ratification nor an authorization of a tortious act. The directed verdict against the punitive damages claim was proper.

## IX.

### JURY INSTRUCTIONS ON COMPARATIVE FAULT AND CONVERSION

 Bulgo contends that the district court's instructions to the jury regarding comparative fault and conversion were er-

roneous and prejudicial. He argues that comparative fault cannot be allowed to be used as a defense to a securities, fraud, or conversion claim. The jury was properly instructed that once it had been found that two or more persons were liable for an injury they should then state a percentage of the responsibility to be assigned to each party.

The jury, however, never reached the issue of comparative responsibility, for the obvious reason that they never found any defendants to be liable for Bulgo's injury. Therefore, any error was harmless. *Cf. Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973, 979 (9th Cir. 1987).

■ Bulgo also claims that the district court, by rejecting Bulgo's proposed instruction, neglected to give proper instruction regarding the burden of proof and conversion. However, the record indicates that the court did give a proper general instruction regarding burden of proof. This instruction covered the burden of proof for conversion, and the special verdict included a reference to that burden of proof in framing the question of conversion. The elements for the tort of conversion were also clearly given to the jury. *See* Order Denying Motion for JNOV or Motion for a New Trial, E.R. tab 17, at 8. Bulgo's additional instruction would have been duplicative and possibly confusing for the jury. The district court's jury instructions were proper.

## X.

### THE MOTION FOR JNOV OR A NEW TRIAL

■ Bulgo's last volley regarding the merits is the contention that the district court should have granted his motion for a JNOV or a new trial on the ground that the counterclaim returned against him was based on a misunderstanding of conflicting testimony. The hurdle that a motion for a JNOV or a new trial must clear to be successful is a very high one. We are "bound to view the evidence in the light most favorable to [the non-moving party] and to give [him] the benefit of all inferences which the evidence fairly supports, even

though contrary inferences might reasonably be drawn." *Cockrum v. Whitney,* 479 F.2d 84, 86 (9th Cir.1973) (quoting *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962)). *See Naton v. Bank of California,* 649 F.2d 691, 697 (9th Cir. 1981).

In light of the district court's careful consideration of the arguments raised by the plaintiff in the motion and the evidence established at trial that the $26,501.01 amount was still due on Bulgo's margin purchase, we find the district court was correct when it denied the motion. *See* Order Denying Motion for JNOV or Motion for a New Trial, E.R. tab 17.

## XI.

### ATTORNEY'S FEES OF MUNOZ AND L & C

Bulgo appeals the award of attorney's fees and costs to Munoz and L & C on three grounds. First, he argues that the district court denied him an evidentiary hearing on the issue of attorney's fees; second, that the district court's finding of bad faith is inconsistent with directed verdicts made during the trial; and third, that the district court did not apply the twelve guidelines established by the Fifth Circuit to determine reasonable attorney's fees in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).

■ The award of attorney's fees to a prevailing party is proper when the trial court finds the losing party acted in bad faith. That is what happened in this case. On June 22, 1987, the district court conducted a lengthy hearing in connection with L & C's motion for attorney's fees and costs. In the course of that hearing, Bulgo's attorney was unable to offer credible evidence to support its claims against Munoz and L & C. The record demonstrates that the claims Bulgo asserted against Munoz and L & C were unwarranted and frivolous. The district court's directed verdicts are not inconsistent with the bad faith decision, and we find its bad faith determination was correct.

■ Further, the amount of fees awarded was not an abuse of discretion.

The district court carefully analyzed the details of the requested fees and applied the twelve factors of *Johnson* adopted by this court in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). *See Moore v. James H. Matthews & Co.*, 682 F.2d 830, 838–40 (9th Cir.1982). By excluding non-compensable items and discounting the hourly rate charged by twenty percent, the district court significantly reduced the requested amount of attorney's fees. *See* Order Re Attorney's Fees and Costs, E.R. tab 19. The district court did not abuse its discretion in awarding attorney's fees and costs to Munoz and L & C.

However, it is inappropriate to classify Bulgo's appeal to us as totally frivolous. The appellate claim with regard to Hawaii's "baby" FTC Act was supported by colorable argument, as the issue was being clarified by this court when the appeal was filed. *See Spinner Corp. v. Princeville Development Corp.*, 849 F.2d 388 (9th Cir.1988). Therefore, we deny Munoz and L & C's requested attorney's fees for this appeal, and grant only customary costs.

AFFIRMED.