**Norman A. BLOWERS, Individually and as Special Administrator of the Estate of Hugh B. Blowers, Deceased; and Naeyo F. Blowers, Plaintiffs,**

v.

**ELI LILLY AND COMPANY, Defendant.**

**No. CIV.00–0008ACK/FIY.**

United States District Court, D. Hawaii.

June 13, 2000.

Roy K.S. Chang, Shim Tam Kirimitsu Kitamura & Chang, Honolulu, HI, Arnold Anderson Vickery, Andy Vickery, Vickery & Waldner LLP, Houston, TX, for Nor-

man A. Blowers, Hugh B. Blowers, Deceased, Naeyo F. Blowers, plaintiffs.

Edmund Burke, Patricia C. Aburano, Burke Sakai McPheeters Bordner Iwanaga & Estes, Honolulu, HI, Andrew See, Michelle R. Mangrum, Shook Hardy & Bacon, Kansas City, MO, for Eli Lilly and Company, Inc., defendants.

James C. Butt, Corporation Counsel, City and County of Honolulu, Honolulu, HI, for Honolulu Police Department, respondents.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S UNFAIR OR DECEPTIVE ACTS OR PRACTICES CLAIM

KAY, District Judge.

This matter stems from Hugh Blowers' ingestion of Prozac®, an antidepressant medication manufactured by Eli Lilly and Company ("Defendant"), and Hugh's subsequent suicide. The following tragic facts are taken from Plaintiffs' Complaint.[1] The facts are, at this point, of course, simply allegations. For purposes of this opinion, however, the Court must assume them to be true.

Plaintiffs Norman Blowers and Naeyo Blowers ("Plaintiffs") are the parents of Hugh Blowers. According to Plaintiffs, Hugh began taking Prozac® on May 27, 1999, battling depression and plagued by suicidal thoughts. Plaintiffs allege that prior to this time, Hugh had never attempted suicide, nor did he have a plan to take such an action. *See* First Am. Compl. ¶ 36.

Hugh's psychiatrist, Dr. Forsten, warned Hugh and his parents about the anticipated side effects of Prozac®. According to Plaintiffs, however, Dr. Forsten, despite a careful reading of the warnings provided by Defendant, was unaware that close monitoring during the early period of Prozac® ingestion was necessary to minimize the risk of suicide, nor was Dr. For-

---

1. The Court extends its deepest sympathy to Plaintiffs for the loss of their son.

sten warned that ingestion may cause akathisia, a condition that can trigger latent suicidal ideation to become patently active.

After several days of ingesting Prozac®, Hugh reported to his parents and friends that the drug was "messing with [his] mind" and he felt discomfort. First Am. Compl. ¶ 42. Not having any warning, neither Plaintiffs nor Dr. Forsten knew such feelings were indicative of akathisia.

On June 3, 1999, after taking only seven Prozac® pills, Hugh hanged himself.

Defendant is the developer, manufacturer, and marketer of Prozac®, and launched the international marketing of the drug in late 1987. Despite some scientific studies indicating the drug may cause some people to become violent or suicidal, Defendant never tested Prozac® to determine whether such a causal relationship truly existed prior to releasing the drug on the market. Despite Defendant's knowledge that the drug may have caused thousands of suicides, Defendant never warned the public, prescribing physicians, or patients about such risks, claiming that there is no connection between Prozac® and suicide or violence because an independent FDA panel investigated the matter and wrote a report to that effect.

Plaintiffs allege that Defendant knew that Prozac® may induce akathisia, and failed to warn about this risk in order to better market the drug. Plaintiffs contend that had Defendant warned Dr. Forsten of the drug's risks, measures would have been taken to prevent Hugh's suicide. They claim that Prozac® is defective in its design, as it is unreasonably dangerous and unavoidably unsafe.

Plaintiffs filed a complaint on January 5, 2000. Plaintiff's claim the following causes of action: (1) products liability; (2) negli-gence; (3) unfair or deceptive acts or practices, in violation of Hawaii Revised Statutes §§ 480–2 and 480–13 and the federal consumer protection act; and (4) battery. Plaintiffs request both economic and non-economic damages, including punitive damages and treble damages under H.R.S. § 480–13(b). Plaintiffs further request this Court enjoin Defendant's unlawful and deceptive acts and practices pursuant to H.R.S. § 480–13(b)(2).

Defendant filed a Motion to Dismiss Unfair or Deceptive Acts or Practices Claims on March 14, 2000. Defendant argues that the Hawaii law does not provide an unfair or deceptive acts or practices cause of action for personal injury actions. Defendant further asserts that the Federal Consumer Product Safety Act, 15 U.S.C. § 2051 et seq., does not extend to prescription drugs such as Prozac®.

Plaintiffs filed a Memorandum in Opposition on April 27, 2000. Plaintiffs contend that H.R.S. § 480–13(b) provides a cause of action for consumers who have been injured by an unfair and deceptive act or practice. Alternatively, Plaintiffs argue that they may recover property damages under the statute, as they lost the services of their son, and will ask this Court to enjoin Defendant from the sale and distribution of Prozac® as provided by H.R.S. § 480–13(b)(2).[2]

Defendant filed a Reply on May 4, 2000, alleging that any non-personal injury claims are derivative from Plaintiffs' personal injury claims, and are barred. Moreover, Defendant alleges that Plaintiffs are not "consumers" as defined by H.R.S. § 480.[3]

Plaintiffs filed a Submission of Uncited Authorities Pursuant to Local Rule 7.8 on May 10, 2000.

**2.** Plaintiffs did not address Defendant's argument that they have no cause of action under the Federal Consumer Product Safety Act, 15 U.S.C. § 2051 et seq.

**3.** Defendant also asserted in its Reply that Plaintiffs' unfair or deceptive acts or practices claims must be dismissed pursuant to the learned intermediary doctrine. Because Plaintiffs did not have an opportunity to address this argument, as Defendant first raised this argument in its Reply, the Court will not address it at this time.

The Court heard oral argument on May 15, 2000.

## STANDARD

### Motion to Dismiss

Under Rule 12(b)(6), in determining whether a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Balistreri*, 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. *Id.*

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as lack of jurisdiction or the statute of limitations. 2A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, ¶ 12.07 at 12–68 to 12–69 (2d ed.1991 & supp. 1191–92) (citing *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)) (emphasis added).

## DISCUSSION

### H.R.S. §§ 480–2 and 480–13 DO NOT PROVIDE A REMEDY FOR LOSS RESULTING FROM PERSONAL INJURY

■ Defendant contends that Plaintiffs' unfair or deceptive acts or practices claims must be dismissed because H.R.S. §§ 480–2 [4] and 480–13 do not provide a cause of action for personal injury claims. Defendant is correct.[5]

■ First, the Court notes that it must follow the decision of an intermediate state court unless other persuasive authority convinces the Court that the state supreme court would decide otherwise. *See Spinner Corp. v. Princeville Development Corp.*, 849 F.2d 388, 390 n. 2 (9th Cir.1988).

The Hawaii Intermediate Court of Appeals determined in *Beerman v. Toro Manufacturing Company*, 1 Haw.App. 111, 615 P.2d 749 (1980) that H.R.S. §§ 480–2 and 480–13 do not extend to personal injury actions:

> [T]hough individual actions based on damage to a consumer's property may be within the purview of ss 480–2 and 480–13, the scope of the statutes does not extend to personal injury actions.

---

4. H.R.S. § 480–2 provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

5. Defendant also correctly argues that the Federal Consumer Product Safety Act, 15 U.S.C. § 2051 et seq., does not extend to prescription drugs such as Prozac®. Plaintiffs did not oppose this argument. Accordingly, the Court DISMISSES Plaintiffs' claim to the extent it relies upon federal law.

The legislative history to §§ 480–2 and 480–13 makes clear that the paramount purpose of both statutes is to prevent deceptive practices by businesses that are injurious to other businesses and consumers. It does not reflect a legislative intent that § 480–13 be used as a vehicle for personal injury suits. Indeed, the trebling of awards under § 480–13, if applied to personal injuries connotes a punitive use of the statute which was specifically rejected by the legislature during its consideration of the original legislation from which § 480–3 arose. Senate Conference Committee Report No. 19, Senate Journal 1075 (1961); House Conference Committee Report No. 16, House Journal 577 (1961).

*Id.* at 117, 615 P.2d 749.[6] This interpretation is consistent with the purpose of the statute to recompense consumers for economic loss suffered as the result of a deceptive trade practice.

Plaintiffs contend that the 1987 amendment to § 480–13 allows for a recovery based upon personal injury. Prior to its amendment in 1987, HRS § 480–13 stated in pertinent part:

§ 480–13 Suits by persons injured; amount of recovery, injunctions.

(a) Any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:

(1) May sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys fees together with the cost of suit; provided that no showing that the proceeding or suit would be in

the public interest (as those terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary when the party against whom the proceeding or suit is brought is a merchant as that term is defined in chapter 490[.]

HRS § 480–13 (1985). Thus, in order to have had standing to bring an action under the 1985 version of HRS § 480–13, a plaintiff was required to demonstrate either that the suit was in the "public interest" or that the defendant was a "merchant." This requirement was linked to the focus of the statutory scheme on competition. *See Cieri v. Leticia Query Realty, Inc.,* 80 Hawai'i 54, 905 P.2d 29, 37 (1995). As the *Beerman* court noted, "[t]he legislative history to §§ 480–2 and 480–13 makes clear that the paramount purpose of both statutes is to prevent deceptive practices by businesses that are injurious to other businesses and consumers." *Beerman,* 615 P.2d at 754.

In 1987, the state legislature amended § 480–13, "in part to ease the burden on the state attorney general's limited resources." *Cieri,* 905 P.2d at 36. The amendment provides in pertinent part that "[n]o person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful under this section." HRS § 480–13.

The Hawaii Supreme Court discussed this amendment:

[The 1987 Amendment], inter alia, marshalled the assistance of the general public in combating the perpetration of unfair and deceptive acts in trade and commerce and allowed members of the consuming public to act as "private at-

---

6. The Court notes that subsequent to the 1987 amendment, the Hawaii Supreme Court approved *Beerman:*

> As the ICA noted in *Beerman,* … "the legislative history to §§ 480–2 and 480–13 makes clear that the paramount purpose of

both statutes is to prevent deceptive practices by businesses that are injurious to other businesses and consumers."

*Cieri v. Leticia Query Realty, Inc.,* 80 Hawai'i 54, 905 P.2d 29, 36 (1995).

torneys general" to enforce HRS §§ 480–2 through 480–13.

*Cieri*, 905 P.2d at 36–37 (citing Sen. Stand. Comm. Rep. No. 1056, in 1987 Senate Journal, at 1345 ("Your Committee also believes that private enforcement of antitrust laws is beneficial to the judicial process as it discourages violations and eases the burden on the attorney general's limited resources.")). The "principal personal effect of the 1987 amendments to HRS chapter 480 on the individual was to allow 'consumers,' who had been the victims of unfair or deceptive acts or practices in the conduct of any trade or commerce, a means to seek recompense for purely individual wrongs; the principal social effect of the amendments was to reinforce the consumer protection aspects of HRS chapter 480." *Id.*

In enacting the amendment, the legislature principally sought to preclude HRS § 480–2's applicability to "private disputes between business [persons]." *Id.* (citing Sen. Stand. Comm. Rep. No. 1056, in 1987 Senate Journal, at 1345 ("[Y]our Committee has amended the bill as follows: ... Provided that suits based upon unfair or deceptive acts or practices under section 480–2 may be brought only by consumers, the attorney general, or the office of consumer protection, in effect precluding its application to private disputes between business [persons].")).

In *Spinner v. Princeville Development Corporation*, 849 F.2d 388 (9th Cir.1988), the Ninth Circuit considered the intent of the Hawaii legislature in providing for consumer suits under this law:

> We conclude that the primary intent of the legislature was to protect consumers from unethical business practices resulting in relatively small commercial injuries. The manner in which the legislature framed the statute demonstrates this primary intent. The statute is designed to provide encouragement to people whose damages are relatively small by granting to them, if successful, treble damages and a minimum recovery of

$1000. The legislative history supports this view. In discussing the purpose of the statute the House and Senate Standing Committee Reports in several places refer to motivating consumers with small grievances to sue businesses that engage in unfair or deceptive practices. House Standing Comm. Rep. No. 661, House Journal 882–83 (1969); Senate Standing Comm. Rep. No. 600, Senate Journal 1111 (1969).

The legislative history does not support Plaintiff's contention that by the adoption of the 1987 amendments the legislature intended to confer upon private individuals a new cause of action for personal injuries. Indeed, Plaintiffs have not alerted the Court to anything in the legislative history or otherwise to support their assertion. No Hawaii courts have addressed the issue, and the legislative history does not suggest that the legislature intended the 1987 amendments to broaden the scope of a consumer's damage claim to include personal injury damages, thereby overruling *Beerman.* Rather, the legislative history is silent, indicating it did not intend to reject *Beerman*'s finding that "the trebling of awards under § 480–13, if applied to personal injuries connotes a punitive use of the statute which was specifically rejected by the legislature during its consideration of the original legislation from which § 480–3 arose." *Id.* at 754; *see also Cieri*, 905 P.2d at 36 (approving *Beerman* ). Because the legislature had previously specifically rejected the statute's application to personal injury claims, it presumably would have been explicit in any reversal of this position in enacting the 1987 amendment.

In the absence of any direct support for their position, Plaintiffs urge this Court to give the statute its broadest interpretation. The Court, however, is not persuaded that the Hawaii Supreme Court would give such a broad interpretation to § 480–13. Rather, this Court finds that given the absence of any clear legislative intent to overrule *Beerman*, the Hawaii Supreme

Court would affirm the central holding in this case. *See* P. Doi, Consumer Protection Law in Hawaii, 1996–June Haw. B.J. 6, 7 (noting that "the plaintiff's damages must be actual economic damages; tort-type general damages are not recoverable in [unfair or deceptive acts or practices] cases"); E. Kemper, Unfair and Deceptive Acts and Practices Under Section 480-2, Hawaii Revised Statutes, 1994–May Haw. B.J. 7, 7 (noting that the Hawaii courts have limited the scope of § 480-2 et seq., most notably, interpreting the law as not "apply[ing] to actions in the nature of personal injuries," citing *Beerman* as good law). The Court will thus follow *Beerman,* as it is not convinced by any other persuasive authority that the state supreme court would decide otherwise.

Plaintiffs alternatively argue that they have a cause of action for economic damages [7] and injunctive relief [8] under § 480-13(b).[9] The economic damages contemplated by the statute, however, are those based on damage to a consumer's property. *See Beerman,* 615 P.2d at 754. Moreover, Plaintiffs' argument is contrary to the clear holding of *Beerman:* "[T]hough individual actions based on damage to a consumer's property may be within the purview of §§§ 480-2 and 480-13, the scope of the statute does not extend to personal injury actions." *Id.* at 118. Plaintiffs' claim for loss of their son's services is grounded upon and derivative of their personal injury claim and consequently precluded. Thus, because Plaintiffs do not assert an action based on damage to their property, their claim under §§ 480-2 and 480-13 fails.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Unfair or Deceptive Acts or Practices Claims. Such claim—both under federal and state law—is DISMISSED WITH PREJUDICE.

### *CONCLUSION*

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Unfair or Deceptive Acts or Practices Claims.

IT IS SO ORDERED.

---

7. Plaintiffs argue that they are entitled to economic damages, as they have lost the services of their minor son.

8. Plaintiffs request that this Court enjoin Defendant from the sale and distribution of Prozac® until such time as it has been carefully tested and all advertisements and drug inserts are made to include all dangerous side effects, including any direct causal link to suicides.

9. H.R.S. § 480-13(b) provides:
   (b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:
   (1) May sue for damages sustained by the consumer and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys' fees together with the costs of suit; provided that where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater, and reasonable attorneys' fees together with the costs of suit. In determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5; and
   (2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorneys' fees together with the cost of suit.